IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Respondent,<br><br>    vs.<br><br>JOHN WESLEY JINGLES,<br><br>    Movant.<br>_____/ | No. CR S-98-0431-FCD-CMK<br>CIV S-04-2090-FCD-CMK<br><br><br>FINDINGS AND RECOMMENDATIONS |

       Movant, a federal prisoner proceeding pro se, brings this motion to correct or set aside a criminal judgment pursuant to 28 U.S.C. § 2255.  Pending before the court are movant's § 2255 motion (Doc. 303 in the criminal docket), respondent's answer (Doc. 323 in the criminal docket), and movant's traverse (Doc. 329 in the criminal docket).

**I.  BACKGROUND**

       Movant was convicted of various offenses related to his involvement in a conspiracy to traffic cocaine and cocaine base with his brother, David Williams, and others. Movant was sentenced to life in federal prison on a number of counts, plus terms less than life on other counts.

The court accepts respondent's detailed statement of the facts, which is supported by careful citation to the record. For the sake of brevity, the court will recite herein respondent's overview of the facts, which are undisputed by movant.[1] The facts are as follows:[2]

> Jingles was involved in a conspiracy to traffic in cocaine and cocaine base ("crack" or "rock") with his brother David Williams and others. . . . Jingles sold cocaine to Michael Roland, Gary Morris, Juan Fant, Dante Foster, and a number of others between the early 1990's and 1999.
>
> Jingles sold Roland five kilos of cocaine in one-kilo increments in 1996. Jingles sold Morris over 30 kilos of cocaine base plus an additional ten kilos of cocaine over a period of years. Jingles used Matthew Johnson as his primary assistant to deliver drugs and run errands, and used Chantel Hearne on occasion to get supplies to convert cocaine into cocaine base or to store drugs at her residence.
>
> Jingles used DuShawn Lee, William Lett, Dante Foster, Jennifer Grey, Chantel Hearne, Walter Dawson, and Matthew Johnson to assist him in converting cocaine into cocaine base, distributing both cocaine base in quantities of 9 and 18 ounces and cocaine in kilogram quantities or larger, transporting cocaine from Sacramento, California, to Mobile, Alabama, for conversion to cocaine base and sale in Alabama, and transporting the cash proceeds of drug trafficking back to Sacramento.
>
> Jingles initially provided Walter Dawson with crack cocaine and a list of three to five customers to service for Jingles. Jingles taught Dawson two different methods for converting cocaine to cocaine base. Jingles provided Dawson with larger and larger quantities of cocaine over time, ultimately providing Dawson with over 20 kilograms of cocaine and cocaine base.
>
> In April of 1998, Jingles had Matthew Johnson transport a large amount of drug proceeds from Mobile to Sacramento. Johnson and his passenger were stopped by the police in Texas, and the currency was seized from hidden compartments in the car.
>
> In 1998, Jingles used DuShawn Lee to convert cocaine into cocaine base in Sacramento. He then had Dante Foster and Jennifer Grey transport two kilograms of cocaine from Sacramento to Mobile, Alabama. After Foster and Grey delivered the cocaine to William Lett's apartment in Mobile, Jingles and DuShawn Lee traveled to Mobile, where Jingles, Lee, Lett, and Foster all took part in converting the cocaine into cocaine base for sale.

///

---

[1] In his traverse, movant states that he "incorporates the government's overview of the facts. . . ."

[2] Citations to the record are omitted for ease of reading. Respondent's brief, from which these facts are taken, contains all record citations.

2

Foster returned to Sacramento, where he picked up a load-car at Jingles' direction and drove the load-car from Sacramento to Mobile. Once the car was in Mobile, Jingles had an associate retrieve one or more kilos of cocaine from a hidden compartment in the vehicle.

During the summer of 1998, Jingles had Chantel Hearne travel from Sacramento to either New Orleans and/or Mobile on three occasions. On each occasion, she transported drug proceeds back to Sacramento for Jingles. The first two trips involved $5,000 each; the third trip involved approximately $86,000.

Jingles had DuShawn Lee travel to Mobile again in March of 1999 to convert cocaine into cocaine base. Jingles told Lee that the cocaine was already in Mobile. Lee met with William Lett in Mobile and they converted cocaine into 40 to 50 ounces of cocaine base. Police executed a warrant at Lett's apartment and arrested Jingles, Lee, and Lett. Police found a firearm hidden under the couch in the living room of the apartment. Lee testified that the gun belonged to Jingles, and that Jingles stated that he used it to protect his cocaine.

Jingles used a number of nominees to purchase cashiers checks for him using currency which was the proceeds of drug trafficking, and also used nominees to purchase property in their own names to conceal Jingles' ownership.

In an unpublished memorandum disposition, movant's conviction was affirmed on direct appeal. See United States v. Jingles, 64 Fed. Appx. 82 (9th Cir. 2003).[3]

## II. DISCUSSION

In his pro se § 2255 motion, movant raises nine arguments (which he denotes as "issues") relating to claims of ineffective assistance of counsel and trial court error. The court will discuss each of movant's nine arguments in turn.

    A.    **Issues I, II, and III – Ineffective Assistance of Counsel**

In Issue I, movant argues that counsel was ineffective for "failure to object, stop trial and Voir Dire ALL THE SAME LYING WITNESSES DRUG SALES MARCH, APRIL, MAY, JUNE 1998 when Jingles was not in Mandy house." He also asserts that counsel was ineffective for failing to object to a read-back of testimony from "lying witnesses." Finally, he contends counsel was ineffective for failing to "exclude the 'IMPOSSIBLE' evidence." In Issue

---

[3] The Ninth Circuit vacated the sentence and remanded for technical corrections.

3

II, movant appears to raise two arguments: (1) counsel was ineffective for failing to bring out at trial that he had moved out of a residence at 7546 Mandy Way in Sacramento; and (2) counsel was ineffective for failing to request a jury instruction on "unreliable impossible evidence" pursuant to Federal Rule of Evidence 602. In Issue III, movant repeats the other arguments. Specifically, in his "Conclusion to Issue III," movant asserts:

> Ineffective failed to investigate WHEN JINGLES "TOLD" counsel he moved out of Mandy house April 1998. Failed to Motion to suppress the "IMPOSSIBLE" evidence. . . . Appellate Attorney was ineffective failure to "SIMPLY READ TRIAL TRANSCRIPTS" would have alerted him to "all IMPOSSIBLE" evidence. . . .

The underlying theme of these claims is that movant believes that the testimonial evidence presented was based on lies and, therefore, "impossible." Whether a witness has lied or told the truth is a question for the trier of fact and was decided against movant by the jury. See United States v. Johnson, 229 F.3d 891, 894 (9th Cir. 2000). It is not an issue to be decided by this court on collateral review. Therefore, to the extent movant would have this court resolve issues of witness credibility to grant relief in this case, that is something the court cannot do.

As to the Mandy Way issue, the record demonstrates that counsel was in fact aware that movant had moved from that location in April 1998. Counsel referred to this during cross-examination and closing argument. As to movant's reference to Federal Rule of Evidence 602, that rule does not support his claims. Rule 602 requires that lay witnesses testify from personal knowledge. Nothing in the rule supports the notion that a jury instruction could be given regarding "impossible evidence," whatever that means.

The court concludes that, because there would have been no legal basis for any of the things movant asserts counsel should have done with respect to "impossible evidence," counsel's performance could not have been deficient in this regard. See Strickland v. Washington, 466 U.S. 668, 688, 690 (1984); see also United States v. Redd, 759 F.2d 699, 701 (9th Cir. 1985).

///

### B. Issue IV – Continuing Criminal Enterprise ("CCE")

Movant raises four specific arguments concerning his CCE conviction. Before continuing, it bears noting the elements of a CCE conviction under 21 U.S.C. § 848. That statute states that a defendant has engaged in a CCE if he violates any provision of the federal drug laws as part of a continuing series of violations undertaken in concert with five or more other individuals and where the defendant is in the position of organizer and obtains substantial income or resources. See Richardson v. United States, 526 U.S. 813, 815 (1999).

In "Part A," movant argues that the jury did not find each of the predicate offenses individually and unanimously, as required by Richardson. The record belies movant's contention. As respondent notes:

> Here, the jury's special verdict form makes clear that they were unanimous about far more than three individual instances in which the Defendant had engaged in distribution or possession with intent to distribute a controlled substance. The jury specifically circled the paragraph numbers on which they agree unanimously. The ones that involved the Defendant directly violating [federal drug laws] were: ¶¶ 3, 5, 13, 18, and 21. Where the jury makes individual findings regarding the predicate series elements, there can be no Richardson error to upset a conviction. United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003).

In "Part B," movant asserts that the trial court erred in failing to give a "buyer/seller" jury instruction. This argument was raised and rejected on direct appeal. The Ninth Circuit held:

> Jingles contends that the district court erred when it rejected his proffered buyer/seller jury instruction. . . . Jingles is correct that a conviction for conspiracy requires more than proof of the sale of narcotics. "[P]roof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy. . . . Rather, conspiracy requires proof of an agreement to commit a crime other than the crime that consists of the sale itself. . . . Were the rule otherwise, every narcotics sale would constitute a conspiracy." United States v. Lennick, 18 F.3d 814, 819 (9th Cir. 1994) (citations and internal quotation marks omitted). However, Jingles' theory lacked evidentiary support. The evidence reflected that Jingles operated a cocaine distribution network and was therefore not a mere buyer or seller of narcotics. The district court therefore did not err when it declined to give Jingles' proffered buyer/seller jury instruction.

Jingles, 64 Fed. Appx. at 83.

Because this issue was rejected on direct appeal, it cannot be re-litigated here. See Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972); United States v. Redd, 759 F.2d 699, 700-01 (9th Cir. 1985).

In "Part C," movant raises his now-familiar contention that the testimonial evidence against him consisted of "impossible lies." Specifically, he argues that evidence of the "series" requirement was based on "impossible lies." As with movant's other arguments based on the "impossible lies" theory, the court does not find that relief is warranted. Movant had the chance for cross-examination of all witness testimony during his trial and witness credibility is a question for the trier of fact and not this court on collateral review. See Johnson, 229 F.3d at 894.

In "Part D," movant asserts that his trial counsel was ineffective for failing to request a jury instruction that one cannot conspire with government informants. To the extent movant argues ineffective assistance of counsel with respect to any of the arguments raised in Issue IV – which the court finds to be baseless – counsel cannot be ineffective for failing to raise a frivolous argument at trial. See Strickland, 466 U.S. at 688, 690; see also Redd, 759 F.2d at 701. Moreover, movant's claim relies on an incorrect factual premise. Movant asserts that two co-conspirators were prisoners who were government informants. However, at the time of the conspiracy in question, the co-conspirators were neither prisoners nor government informants.

**C.   Issue V – Testimony of Expert Witnesses**

In "Part A" of this claim, movant challenges the expert testimony offered by Drug Enforcement Agency special agents. He claims:

> . . . Here in Jingles, Agents Colter, and Rodriguez Both from DEA 6, reports corroborate the Witnesses "IMPOSSIBLE LIES." Witnesses told Expert police, they purchased drugs, they witness passing drug cash, watched Jingles cook crack cocaine, and met with Ben supplier, David Williams and Matt Johnson all at Mandy house, March, April, May and June 1998, but Jingles moved to 601 Villiage way. All the LYING under OATH, telling all this "IMPOSSIBLE" LIES, was false CAUSE JINGLES

> did NOT LIVE THERE AT THAT TIME.  DEA REPORTS Agents were told the same lies corroborates that "Experts" Unreliable hearsay also cannot be used if Ineffective counsel raised the jury instructions that Experts F.R.EV 702, must be reliable evidence for admission.  This jury instruction was not given. . . .

It thus appears that movant is arguing:  (1) the experts' testimony should not have been admitted because it was based on "impossible lies" and, therefore, was unreliable; and (2) counsel was ineffective for failing to request an instruction that expert testimony could not be based on "impossible lies."  Neither argument has merit.

As to movant's claim that the testimony should not have been admitted, the basis for the assertion is that the fact witness testimony which formed the basis for the experts' opinions consisted of "impossible lies."  However, that was a matter for the trier of fact to decide at the trial, and is not a matter for this court to decide on collateral review.  See Johnson, 229 F.3d at 894.  Movant had every opportunity to cross-examine the fact witness testimony in order to test its veracity.  He also had every opportunity to cross-examine the government's expert witnesses.

As to movant's claim that counsel was ineffective for failing to request a jury instruction, movant cited Federal Rule of Evidence 702 in support of his contention.  He appears to assert that Rule 702 requires that expert testimony be based on reliable fact witness testimony.  The rule, however, refers to reliability in the context of scientific methods and principles which form the basis of scientific or technical expert testimony.  Because no such expert testimony was offered in this case, Rule 702 simply does not apply.  Therefore, counsel could not have been deficient for requesting the Rule 702 jury instruction movant asserts should have been requested.  See Strickland, 466 U.S. at 688, 690; see also Redd, 759 F.2d at 701.

In "Part B" of this claim, movant revises the challenge to Internal Revenue Service Special Agent Jensen's testimony he raised on direct appeal, and which the Ninth Circuit rejected.  See Jungles, 64 Fed. Appx. at 84.  When a claim has been rejected on direct review, it cannot be re-litigated in a § 2255 motion.  See Odom, 455 F.2d at 160; Redd, 759 F.2d at 700-01.

7

**D.    Issue VI – Sufficiency of the Evidence**

In "Part A," movant challenges the sufficiency of the evidence to establish money laundering. Movant argues:

> Facts in Jingles, there was no proof or reliable witnesses to testify that Jingles said he was purchasing cars, homes in other relatives names with "INTENT TO CONCEAL." but to purchase the Trucks and boats for personal pleasure. . . . [¶] Only evidence to Laundering was IRS Agent Jensen, no other "IMPOSSIBLE" lies showed intent to CONCEAL. IRS agents "I BELIEVE" the proceeds is illegal cannot meet the Money laundering statute, Evidence to Conceal.

He also alleges, as with most of his other claims, ineffective assistance of counsel.

As respondent observes, there was ample evidence of money laundering:

> The evidence adduced at trial is as follows: Steve Jensen, a special agent in the criminal investigations division of the Internal Revenue Service, conducted a source and application of funds analysis relating to Jingles' finances. (citations to record omitted). Between January 1, 1996, and June 30, 1999, Jingles had $250,954.65 in unexplained expenditures. (citations omitted). Jingles' purchases of a Skeeter Bass boat, the Chevy Tahoe, and real estate at 7546 Mandy Way, Sacramento, were accomplished through the use of the proceeds of drug trafficking, in excess of $10,000 each, structured to conceal the source of the funds. (citation omitted). Further, Jingles failed to file a form 8300 relating to the Chevy Tahoe. (citation omitted).

To the extent movant challenges Jensen's expert testimony, that claim has been rejected, as discussed above. Further, respondent is correct that there is no requirement for a money laundering conviction that the defendant <u>say</u> to anyone that he intends to engage in money laundering. The acts of the defendant speak for themselves and can establish the crime. Therefore, to the extent movant argues that there was insufficient evidence of money laundering because he never "said he was purchasing cars, homes in other relatives names," relief is not warranted.

In "Part B" of this claim, movant argues: ". . . Key element 'INTENT' cannot be made by 'IMPOSSIBLE' drug FALSE EVIDENCE." He then repeats many of the arguments raised and rejected above. The court finds that this claim is merely a reiteration of movant's other failed claims that his conviction was based on "impossible lies." As has been stated,

movant's "impossible lies" argument goes to the credibility of the witnesses, which is not a determination for this court to make on collateral review.  See Johnson, 229 F.3d at 894.

As has also been stated above, movant cannot claim ineffective assistance of counsel for failing to raise a specious argument at trial.  See Strickland, 466 U.S. at 688, 690; see also Redd, 759 F.2d at 701.  Therefore, the court rejects any ineffective assistance of counsel claims raised in Issue VI.

### E.   Issues VII and VIII – Sentencing Errors

In Issue VII, movant asserts that the trial court violated Blakely v. Washington, 124 S.Ct. 531 (2004).  In making this argument, movant appears to assert that his sentence was enhanced based on facts found by the judge and not the jury.  Movant outlines his understanding of the relevant Supreme Court cases on this issue and largely repeats the claims made throughout his § 2255 motion that his conviction was based on "impossible evidence" and lies.  He also adds the following assertions:

> . . . Petitioner was sentence standard range 49 to 53 months.  He was enhanced to 90 months sentence under exceptional sentence clause in "domestic violence". . . .  Jury has not found all the facts which the law makes essential to the punishment.  Here the judge imposed the 90 month sentence upon facts admitted at guilty plea, these facts alone are insufficient.  [¶] . . . Only witness testimony used to determine estimated drug quantity.  Count 21, 22 enhanced . . . on "IMPOSSIBLE FALSE TESTIMONY."

Regardless of the factual bases of movant's Blakely claim of sentencing error, respondent is correct that no relief on this claim is available in the context of a § 2255 motion because the line of cases following Apprendi v. New Jersey, 124 S.Ct. 531 (2004), which includes Blakely and United States v. Booker, 125 S.Ct. 738 (2005), does not apply retroactively to cases on collateral review.  See United States v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir. 2002); Cook v. United States, 386 F.3d 949 (9th Cir. 2004).

/ / /

/ / /

In Issue VIII, movant challenges the imposition of successive sentences on the CCE conviction and the convictions on the predicate substantive offenses. Movant asserts that such consecutive sentencing subjected him to double jeopardy. Movant correctly cites <u>Rutledge v. United States</u>, 517 U.S. 292 (1996), for the proposition that double jeopardy is violated when successive sentences are imposed for a CCE conviction and a drug conspiracy conviction because of the similarity between the elements of conspiracy and the "in concert" requirement for a CCE conviction. However, movant's Issue VIII is based on the substantive convictions, not a conspiracy conviction. <u>Rutledge</u> does not apply because the substantive underlying offenses do not have elements similar to those for conspiracy. The precise argument movant raises in Issue VIII is foreclosed by <u>Garrett v. United States</u>, 471 U.S. 773 (1985). <u>See also</u> <u>United States v. Mouzin</u>, 785 F.2d 682 (9th Cir. 1986).

To the extent movant alleges ineffective assistance of counsel in Issue VIII for not objecting to consecutive sentencing in this case, the court agrees with respondent that counsel cannot be said to have been ineffective for failing to raise an argument foreclosed by Supreme Court precedent. <u>See</u> <u>Strickland</u>, 466 U.S. at 688, 690; <u>see also</u> <u>Redd</u>, 759 F.2d at 701.

**F.     Issue IX – Constructive Amendment of the Indictment**

Finally, movant argues that there was a constructive amendment to the indictment in violation of the Fifth Amendment's Grand Jury Clause. Specifically, movant asserts:

> . . . Prosecutors constructive amendment from the judge's jury instruction that the jury must broaden the scope of indictment bases of conviction to include impermissible amendment because conviction rested on facts distinctly different from those set forth in indictment. In Jingles, (Count 1), one instruction amendment that jury must convict illegal facts, drug transactions prior to 1993, all not in first indictment. This court poisoned Count 2 (CCE) . . . and thus poisoned convictions to (CCE) predicate counts to jury deliberating facts not in indictment. . . .

Movant specifically refers to the "first indictment" and fails to recognize that a superceding indictment was filed on September 5, 1999. Movant does not contend any impermissible amendment to the superceding indictment.

10

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Movant's motion pursuant to 28 U.S.C. § 2255 (Doc. 303 in the criminal docket) be denied; and

2. The Clerk of the Court be directed to close companion civil case no. CIV S-04-2090-FCD-CMK.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 23, 2007.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE