UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:98-cr-00431-KJM-CMK |
| Plaintiff, | |
| v. | ORDER |
| JOHN WESLEY JINGLES, | |
| Defendant. | |

      Defendant has filed two motions with the court. The first is a motion to reduce his sentence on three counts to 360 months under 18 U.S.C. § 3582(c)(2) in light of the Fair Sentencing Act of 2010. The government opposes the motion, and defendant has replied. The second is a motion under Federal Rule of Civil Procedure 60(b) to reopen proceedings on his § 2255 motion. The court turns first to the § 3582(c)(2) motion. For the reasons below, both motions are DENIED.

I. MOTION TO REDUCE SENTENCE

    A.    ALLEGED FACTS AND PROCEDURAL BACKGROUND

      In 2001 defendant was found guilty by a jury of twenty-nine counts related to drug trafficking in cocaine base (crack) and powder cocaine (cocaine). A sentencing hearing was held on October 23, 2001. Adopting the findings in the presentence investigation report (PSR) with

some modifications not relevant here, the district judge assigned at the time[1] found defendant's offense level under the sentencing guidelines was 44 and his criminal history category was VI. (Sentencing Tr. at 23, ECF 268.)  The judge then sentenced defendant to three life sentences on Counts 2, 21 and 22, the drug conspiracy and continuing criminal enterprise convictions, and 13 consecutive 480-month terms on the other substantive drug counts, totaling 6,240 months to run concurrently with the life sentences.  (*Id.* at 24.)  Defendant was also sentenced to a total of 1,200 months in prison on nine other counts, to be served concurrently with the three life sentences and the 6,240 month term.  ECF No. 269 at 3.

For purposes of calculating the sentencing guideline range, the PSR divided defendant's offenses into two groups.  *See* USSG § 3D1.2(d).[2]  Group I included "the 20 counts involving drug distribution and 2 counts of Interstate Transportation in Aid of Racketeering," comprising Counts 2, 21 and 22, under the "guideline pertaining to Continuing Criminal Enterprise at USSG 2D1.5."  (PSR at 10.)  Noting that USSG. §2D1.5 "advises to apply the greater of (a) 4 plus the offense level from 2D1.1 applicable to the underlying offense, or (b) 38," the PSR started the calculation of defendant's offense level by applying §2D1.1.  (*Id.*)  Application of §2D1.1 required "an estimation of the drugs" involved in the underlying offenses.  (*Id.*)  The PSR found defendant's crimes in this group involved a minimum of 19,000 grams and a maximum of 34,000 grams of cocaine and a minimum of 3,825 grams and a maximum of 7,650 grams of cocaine base.  (*Id.*)  Applying the Guidelines' conversion to marijuana equivalents resulted in a finding that defendant "distributed at least 80,300 kilograms, but up to 159,800 kilograms marijuana equivalents of cocaine and cocaine base."  (*Id.*)  At the time, USSG §2D1.1(c)(1) provided that 30,000 or more kilograms of marijuana translated to a base offense level of 38.  (*Id.*)  Four levels were added under USSG §2D1.5(a)(1) due to defendant's

/////

---

[1] The Hon. Frank C. Damrell, Jr., presided over defendant's trial and sentencing.  This action was reassigned to the undersigned on January 20, 2011.  *See* ECF No. 352.

[2] The probation officer used the May 1, 2001 Supplement to the 2000 U.S. Sentencing Guidelines Manual in preparing the PSR.

continuing criminal enterprise conviction, and two additional levels were added due to his possession of a firearm in furtherance of drug trafficking. (*Id.* at 11.)

The adjusted offense level for Group I was 44. (*Id.*) The adjusted offense level for Group II, comprising the remaining seven counts, was 27. (*Id.* at 12.) In accordance with applicable grouping rules, *see* USSG §§3D1.1, 3D1.4 (2000), the PSR recommended a total offense level of 44. (PSR at 12.) Given the criminal history of VI, *id.* at 16, this resulted in a guideline range of life in prison on Counts 1, 2, 21 and 22, and a statutory maximum on all other counts. (*Id.* at 22.)

Defendant does not dispute any of the PSR's calculations. Rather, he seeks to reduce his life sentences to 360 months on each of Counts 2, 21 and 22 based on the reduction in sentencing disparities between crack and powder cocaine offenses effected by the Fair Sentencing Act (FSA) in 2010.[3]

B. STANDARD

A district court's authority to modify a prison sentence is governed by 18 U.S.C. § 3582, which provides in relevant part:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant . . ., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

As the Ninth Circuit recognizes, "[t]he Supreme Court has clarified that section 3582(c)(2) requires a two-step inquiry." *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013) (citing *Dillon v. United States*, 560 U.S. 817, 130 S. Ct. 2683, 2691 (2010)). "First, a district court must determine whether a prisoner is eligible for a sentence modification under the Commission's policy statement in USSG §1B1.10." *Id.* (citing *Dillon*, 130 S. Ct. at 2691).

---

[3] Defendant's motion is not based on any other or currently pending amendments to the Sentencing Guidelines.

3

Specifically,

> USSG § 1B1.10 instructs district courts first to ascertain whether a prisoner is eligible for a sentence reduction by "'determin[ing] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 130 S. Ct. at 2691 (quoting §1B1.10(b)(1)). Section 1B1.10 also imposes a sentencing floor so that a district court "generally may 'not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) ... to a term that is less than the minimum of the amended guideline range' produced by the substitution." *Id.* (quoting §1B1.10(b)(2)(A)); *see also United States v. Fox*, 631 F.3d 1128, 1131 (9th Cir.2011).

*Id.* at 1155 n.3.

Resentencings under §3582(c)(2) "are not plenary resentencings, but are limited in scope and purpose." *Id.* at 1157. Second, notwithstanding the limited nature of the sentencing adjustments authorized under §3582(c)(2), such adjustments are reviewable under the reasonableness standard announced in *United States. v. Booker*, 543 U.S. 220 (2005), because they include consideration of the §3553(a) factors. *Id.* at 1158.

### C.   ANALYSIS

Defendant contends the FSA reduced his sentencing range by lowering his base offense level to 36 from 38 for the amount of cocaine base he was convicted of distributing. (ECF 370 at 2.) Defendant contends this amendment was made retroactive explicitly, and that an amended total offense level of 42, instead of 44, would change defendant's Guidelines range on Counts 2, 21 and 22, from life to 360-years-to-life. (*See id.*) He therefore requests a reduction of his sentence on Counts 2, 21 and 22 to 360 months. (*Id*. at 6.)

The government, while opposing defendant's motion, does not dispute defendant's characterization of the FSA, its retroactivity, or the potential for recalculation of defendant's Guidelines range on Counts 2, 21 and 22. (*See* ECF 375.) Instead, the government asserts three reasons this court should not grant a reduction: (1) the section 3553(a) factors indicate a life sentence is still appropriate in this case; (2) the FSA amendments do not lower defendant's sentencing range because even if defendant's sentence on Counts 2, 21 and 22 were reduced to 360 months, he still faces a concurrent sentence of 6,240 months (520 years) on the remaining counts of conviction, which means he remains under a life sentence for all practical purposes; and

(3) the court should make a supplemental finding based on the PSR that even after applying the FSA amendment, the drug quantities still result in a base offense level of 38. (*Id.* at 1.)

### 1. Step One: Eligibility

Under the first step in *Dillon*, the court must determine whether defendant is eligible for a sentence modification under the Sentencing Commission's policy statement in USSG § 1B1.10.3. *Dunn*, 728 F.3d at 1155. That section reads in relevant part:

> (2) Exclusions.--A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if--
>
> (A) none of the amendments listed in subsection (d) is applicable to the defendant; or
>
> (B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range.

USSG § 1B1.10(a)(2)(A)–(B) (2014).[4] Subsection (d) identifies covered amendments that are listed in Appendix C to the Guidelines. USSG § 1B1.10(d) (2014). Amendments 748, 750 and 759 are the covered amendments made by the Sentencing Commission to implement the FSA, and on which defendant relies. *See* USSG, Appendix C (Vol. III).[5]

The government argues the court may not reduce defendant's sentence because the FSA amendments do not have the effect of lowering defendant's "sentencing range." (ECF 375 at 11.) The government contends defendant's 520 year sentence on the other substantive drug counts, not challenged here, amounts to an effective life sentence. (*Id.* at 12.) In its view, even if the court modified defendant's sentence on each of Counts 2, 21 and 22 to 360 months, defendant's sentencing range would remain the same. (*Id.*) Additionally, the government urges

---

[4] The court relies here on the version of USSG §1B1.10 in the 2014 edition of the USSG Sentencing Guidelines Manual, effective November 1, 2014. *See* USSG §1B1.10, Application Note 8; *see United States v. Pleasant*, 704 F.3d 808, 811 n.7 (9th Cir. 2013) (relevant commentary in USSG manual is that in effect at the time § 3582(c) motion ruled on); *see also United States v. Waters*, 771 F.3d 679, 680 (9th Cir. 2014) (same, citing 2011 amendment to Application Note 6 of USSG §1B1.10 (2011)).

[5] Of the three amendments, the 2014 Guidelines Manual, USSG §1B1.10(d) refers only to Amendment 750 Parts A and C. This is the amendment effected by the FSA that "repromulgated without change" the relevant changes in the Drug Quantity Table in §2D1.1(c) and §2D2.1 of the Guidelines. *See* USSG, Appendix C (Vol. III).

the court to make a supplemental finding that the PSR shows defendant was responsible for the maximum quantity of drugs mentioned in the PSR, not the minimum. (*Id.* at 14.) With this finding, defendant's base drug offense level would remain 38 even under the amended sentencing guidelines. (*Id.*)

The court is not persuaded by the first contention, as discussed below. The government concedes, and it is well established, that the FSA, in combination with the Sentencing Commission's subsequent Amendments 748, 750 and 759, mandates a retroactive reduction in penalties for crack cocaine offenses under the § 2D1.1(c) drug quantity table. *Pleasant*, 704 F.3d at 809–10. In convicting defendant on Counts 21 and 22, the jury found as to each count that defendant "possessed with intent to distribute in excess of 50 grams of cocaine base." *United States v. Jingles*, 702 F.3d 494, 497-98 (9th Cir. 2012). As noted, the sentencing judge adopted the PSR's calculations, which stated defendant is responsible for distributing at least 19,000 grams of cocaine and 3,825 grams of cocaine base and up to 34,000 grams of cocaine and 7,650 grams of cocaine base: the equivalent of a combined minimum of 80,300 kilograms of marijuana and a combined maximum of 159,800 kilograms of marijuana. (PSR at 10.) The PSR did not identify and the sentencing judge did not find an exact amount for which defendant was responsible. In 2001, even the minimum amount translated to the highest possible base offense level. (*See id.*)

The FSA amendments reduce the drug equivalency for 1 gram of cocaine base to 3,571 grams of marijuana. (USSG §2D1.1(c), note 10(D).) This translates in this case to a marijuana equivalency range between 13,650.075 kilograms and 27,318.15 kilograms for the cocaine base portion of the drug quantity. The drug equivalencies for cocaine remain unchanged, ranging between 3,800 kilograms and 6,800 kilograms of marijuana. Together, the amended drug equivalency is between 17,450.075 kilograms and 34,118.15 kilograms of marijuana. Using the minimum amount of drugs distributed by defendant, his base offense level would be 36; using the higher amount, defendant's base offense level would remain at 38. *See* USSG §2D1.1(c)(1), (2).[6]

---

[6] For purposes of determining the post-amendment base offense level range, the court uses the drug quantity table that came into effect with the FSA, found in § 2D1.1(c) of the 2011

1   If 36 is the base offense level, defendant's total offense level drops from 44 to 42.
2   With a criminal history of VI, this two-point drop results in a reduced guideline range on counts
3   2, 21 and 22, from life to 360-months-to-life. *See* USSG Sentencing Table. This would mean the
4   applicable Amendments do "have the effect of lowering the defendant's applicable guideline
5   range." U.S.S.G §1B1.10(a)(2)(B); *see Pleasant*, 704 F.3d at 812 (quoting U.S.S.G. §1B1.10
6   Application Note1(A)) ("section 3582(c)(2) 'is triggered only by an amendment . . . that lowers
7   the applicable guideline range (i.e., the guideline range that corresponds to the offense level and
8   criminal history category determined pursuant to § 1B1.1(a), *which is determined before*
9   *consideration of any departure provision in the Guidelines Manual or any variance*).'")
10  (emphasis in original).

11  The government's first contention, that the FSA does not affect the Guidelines
12  range, is based on a misunderstanding of "guideline range" as used in section 1B1.10(a)(2)(B). In
13  making this argument, the government incorrectly equates "guideline range" with defendant's
14  overall sentence. *Cf. United States v. Leniear*, 574 F.3d 668, 673 (9th Cir. 2009) (rejecting
15  defendant's argument that "sentencing range" includes sentencing ranges corresponding to any
16  base offense levels because it "ignores the fact that only one sentencing range is calculated in the
17  course of a sentencing recommendation; a sentencing range is not determined for each
18  intermediate step"). The original Guidelines range in defendant's case was, as discussed above,
19  determined by grouping defendant's offenses into two groups, while the overall sentence was
20  derived by grouping all of the offenses by statutory maximum sentences for each offense. (*See*
21  PSR at 25.) For the reasons discussed above, if the minimum drug quantity is used to calculate
22  the base offense level, the FSA amendments do have the effect of lowering defendant's
23  Guidelines range to 360 months to life in prison.[7]

---

edition of the USSC Sentencing Guideline Manual. Amendment 782, which came into effect in November 2014, lowered further the equivalency ranges for cocaine base. As noted above, the application of Amendment 782 is not before the court on this motion.

[7] The PSR describes multiple "guideline ranges" for defendant's offenses, including life in prison for Counts 1, 2, 21 and 22, and statutory maximums for all other counts, including 480 months on each of the substantive drug counts. (PSR at 22.)

7

The government also argues this court should make a supplemental finding that defendant was responsible for the maximum amount or more of cocaine and cocaine base reflected in the PSR. (*See* ECF 375 at 15 –16 (citing, among other cases, *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012)).) The government correctly contends such a finding would result in defendant's Guidelines range remaining at 38, even after the FSA, because of the higher drug quantities that result from using the maximum amount, totaling 34,118.15 kilograms of marijuana equivalent. (*See id.* at 15.)

As noted, at sentencing the court adopted the findings of the PSR with a few corrections not relevant here. Included in those findings are the following:

> Although the defendant distributed large quantities of cocaine powder for the purpose of converting it to cocaine base, the counts of conviction that specifically involved the distribution of cocaine base (Counts 21 and 22) are the only amounts of cocaine base used for guidelines calculations; however, with the goal of converting cocaine to cocaine base, and the extent of the organization, it may be concluded that Jingles distributed cocaine and cocaine base in an amount that is at least 10 times higher than offense level 38.
>
> . . . .
>
> USSG 2D1.1, Application Note 17, indicates if the amount of drugs involved in the offense is ten times higher than the amount of drugs at level 38 (150 kilograms of cocaine, 1.5 kilograms of cocaine base, or 30,000 kilograms of marijuana), then an upward departure may be appropriate. Although the amount of drugs used to calculate the guidelines is not 10 times higher than level 38, it is reasonable to believe the defendant possessed and distributed at least this amount over the life of the Conspiracy. Also, it is the theory of the prosecutor that all of the cocaine powder distributed by Jingles was converted into cocaine base prior to distribution on the street. Based on this theory, Jingles distributed much more than 10 times the amounts at level 38. Also, based on the financial analysis, the defendant may have distributed 250 kilograms of cocaine powder and/or cocaine base.

(PSR ¶¶ 30, 118.) The PSR did not recommend or find necessary upward departures at the time of defendant's sentencing because all sentencing options provided for life in prison. (PSR ¶ 119.) While there is a basis in the record for concluding that defendant was responsible for the maximum amount, or more, of cocaine and cocaine base reflected in the PSR, the court declines to make a supplemental finding that defendant was responsible for the maximum amount of

/////

drugs, or more, as set forth in the PSR.  Accordingly, the court will assume the FSA amendments reduce defendant's sentencing range on Counts 2, 21 and 22 from life to 360-months-to-life.

### 2. Step Two: Section 3553(a) Factors

Under the second *Dillon* step, the court considers the applicable section 3553(a) factors and exercises its discretion to determine whether a reduction in the actual sentence imposed is warranted in whole or in part under the particular circumstances of this case. *Dunn*, 728 F.3d at 1155.  The "overarching instruction" of title 18 U.S.C. section 3553(a) is to "impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals advanced in § 3553(a)(2)." *Spears*, 555 U.S. at 265 (internal quotation marks, citation omitted).  The four broad goals of sentencing are retribution, deterrence, incapacitation and rehabilitation. *Tapia v. United States*, ___ U.S. ___, 131 S. Ct. 2382, 2387 (2011) (citing § 3553(a)(2)).

Section 3553(a) factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).

The government argues section 3553(a) factors militate in favor of denying any reduction because the nature and circumstances of defendant's offenses, his history and characteristics, and the purposes of sentencing all support a life sentence. (ECF 375 at 8–11.) Citing to the PSR, the government recounts the following facts.

Defendant was a drug kingpin who operated a large cocaine trafficking organization in Sacramento, California and Mobile, Alabama from the late 1980s to the late 1990s. (*Id.* at 9.)  In this capacity he employed numerous people for illegal purposes and possessed a firearm in furtherance of his drug trafficking. (*Id.*)  A financial analysis revealed defendant spent more than $250,000 cash over a single 30-month period. (*Id.*)  The sentencing judge found a life sentence was warranted. (*Id.* at 10.)  Moreover, defendant is a career offender

who had accumulated 14 criminal history points prior to this case. (*Id.*)[8]  Prior to the conviction at issue here, defendant had been convicted of one drug offense and two spousal abuse offenses, which involved punching and choking his wife, pointing a revolver at her, hitting her in the head, and pushing her against a stove. (*Id.*)  While executing searches, law enforcement found him several times in possession of significant amounts of cash, loaded firearms, and drugs. (*Id.*)

The government also argues the sentencing purpose of deterrence supports sentencing someone with defendant's criminal history to life for committing such serious crimes. The government's deterrence argument is somewhat in tension with its argument that defendant's 6,240 month sentence on other counts of conviction already amounts to a life sentence. An effective life sentence exerts a deterrent effect equivalent to an actual one.

The effective life sentence also serves two other sentencing goals: retribution and incapacitation. *Tapia*, 131 S. Ct. at 2387 (citing § 3553(a)(2)).  The length of the sentence affords defendant ample time to participate in rehabilitative programs, should he choose. *Cf. id.* at 2385, 2392 (while court may not impose or lengthen a prison sentence for purposes of rehabilitation, court may discuss opportunities for rehabilitation).

Defendant's motion also exposes competing goals between that of the FSA to "mitigate the unfair disparity between crack and powder cocaine offense sentences," *United States. v. Augustine*, 712 F.3d 1290, 1295 (9th Cir. 2013), and that of the trial and sentencing judge most familiar with the facts of the case, who based his decision on what he knew from trial and the findings of the PSR to sentence defendant very close to or at the maximum term allowed by law.  To resolve these facts, this court must reconcile these competing goals.

The court has considered whether to maintain the life sentence, sentencing at the top end of the range, in light of defendant's status as a kingpin, and the large quantities of controlled substances in which he trafficked over a significant period of time.  On the one hand, as noted above, the "overarching instruction" of section 3553(a) is "to 'impose a sentence

---

[8] The government concedes that defendant's status as a career offender does not impede the relief defendant seeks because his drug quantities combined with his continuing criminal enterprise conviction result in a base offense level greater than the maximum base offense level provided for a career offender, which is 37. (*Id.* at 10–11.)

sufficient, but not greater than necessary' to achieve sentencing goals advanced in § 3553(a)(2)." *Kimbrough v. U.S.*, 552 U.S. 85, 111 (2007).  A sentence at the low end of the new Guidelines range would not appear, at this point, to disturb the effective life sentence defendant will still serve on all counts combined.

On the other hand, it is virtually impossible to conclude from review of the PSR and the sentencing transcript that defendant would have been sentenced at the low end of the Guidelines range on Counts 2, 21 and 22, had there been a range other than life in prison.  Indeed, as discussed above, the PSR found that an upward departure might be appropriate but found a departure unnecessary to recommend because of the life sentence required by the operative Guidelines range.  (PSR at 24.)  Moreover, to grant defendant's motion would result in a reduction of his sentence on the three most serious counts of conviction below the 480 month terms imposed on the other, lesser substantive drug counts.

D.     CONCLUSION

On balance, the court finds that the sentencing factors weigh in favor of maintaining life sentences on each of courts 2, 21 and 22, to be served consecutively.

II. RULE 60(B) MOTION TO REOPEN § 2255 MOTION

Defendant has also filed a motion to reopen proceedings on his prior motion brought under 28 U.S.C. § 2255.  (ECF No. 382.)  By this motion, defendant contends the court erred in denying his claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) on procedural grounds and he seeks a ruling on the merits of the claim.

Defendant's § 2255 motion was filed October 4, 2004 (ECF No. 303) and denied by order filed November 29, 2007 (ECF No. 336).  Defendant appealed the denial, and by amended order filed November 19, 2012, the United States Court of Appeals for the Ninth Circuit affirmed the denial.  The motion at bar is presented more than seven years after this court's denial of the motion and two years after the decision of the court of appeals.  Assuming the motion is properly construed as a Rule 60(b) motion, *see Gonzalez v. Crosby*, 545 U.S. 524 (2005), it is untimely.  *See* Fed. R. Civ. P. 60(c) (Rule 60(b) motion must be made within a "reasonable

/////

time—and . . . no more than a year after the entry of the judgment or order or the date of the proceeding). It will therefore be denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to file the presentence investigation report for defendant John Wesley Jingles under seal;

2. Defendant's November 5, 2013 motion to reduce his sentence (ECF No. 370) is DENIED; and

3. Defendant's October 27, 2014 motion to reopen his § 2255 motion (ECF No. 382) is DENIED.

IT IS SO ORDERED.

DATED: September 30, 2015.

_____
UNITED STATES DISTRICT JUDGE